UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | |
|---|---|
| ALBERT MCGOWAN, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. 4:20-CV-1393 PLC |
| KILOLO KIJAKAZI,<br>Acting Commissioner of Social Security,[1] | ) ) ) ) |
| Defendant, | ) ) |

**MEMORANDUM AND ORDER**

Plaintiff Albert McGowan seeks review of the decision of Defendant Acting Social Security Commissioner Kilolo Kijakazi, denying his application for Supplemental Security Income (SSI) under the Social Security Act. Because the Court finds that substantial evidence supports the decision to deny benefits, the Court affirms the denial of Plaintiff's application.

**I.     Background and Procedural History**

On January 6, 2017, Plaintiff filed an application for SSI, alleging he was disabled as of January 1, 2014, due to "degenerative disc disease, arthritis, hypertension, chronic pain syndrome, scoliosis, depression and anger issues."[2] (Tr. 173-81, 202)[3] The Social Security Administration (SSA) initially denied Plaintiff's claim in March 2017, and he filed a timely request for a hearing

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted, therefore, for Andrew Saul as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] Because Plaintiff does not challenge the ALJ's determination that no medically determinable mental impairment was established, the Court does not discuss the finding in its Order.
[3] Plaintiff agreed to amend his onset date to April 20, 2017. (Tr. 31, 199-200)

before an administrative law judge (ALJ).  (Tr. 111-113)  The SSA granted Plaintiff's request for review and conducted a hearing in September 2018.  (Tr. 25-71)

In a decision dated February 25, 2019, the ALJ determined that Plaintiff "has not been under a disability within the meaning of the Social Security Act since December 14, 2016, the date the application was filed." (Tr. 9-24)  Plaintiff subsequently filed a request for review of the ALJ's decision with the SSA Appeals Council, which denied review.  (Tr. 1-5)  Plaintiff has exhausted all administrative remedies, and the ALJ's decision stands as the Commissioner's final decision. *Sims v. Apfel*, 530 U.S. 103, 106-07 (2000).

II.     **Evidence Before the ALJ**

Plaintiff, born June 18, 1964, testified that he had lived with a friend on and off for twenty years. (Tr. 19, 34)  Plaintiff testified that while he tried to help with household chores, his cleaning was not "up to [his friend's] par."  (Tr. 35-36)  He claimed to cook once a week, mostly baking because it required less standing.  (Tr. 36)  He further helped with the grocery shopping, which included carrying bags in from the street and up about sixteen stairs, watched his friend's grandchild at times (although never alone), cut the grass (which took hours because he required rest breaks), and took out the trash.  (Tr. 36-39, 43, 51-54)  He further helped with the laundry approximately once a month, and while he did not carry the basket, he did travel up and down the stairs to the basement laundry machines.  (Tr. 47-48)  Plaintiff testified that he was only able to take on one project per day, and that several days a week he stayed in bed because the pain was so severe. (Tr. 42-43, 54-55)  He further claimed that while doctors talked about doing knee surgery or back surgery, he was not interested in that.  (Tr. 55-56)

A vocational expert also testified at the hearing.  (Tr. 57-69)  The ALJ asked the vocational expert to consider a hypothetical individual with the following limitations:

> Medium, frequently push and pull with the left upper extremity and frequently use foot controls with the right lower extremity. Occasionally climb ramps and stairs, never climb ropes, ladders, or scaffolds. Occasionally stoop, kneel, crouch, and crawl. Frequently reach overhead bilaterally. And also frequently handle bilaterally in all other directions.
> Avoid temperature—avoid concentrated exposure to temperature extremes, hot and cold, humidity, unprotected heights, hazardous machinery, and moving machinery.
> And then limited to routine, repetitive tasks with occasional interaction with coworkers and supervisors—no. Leave that last one off. Just stop at simple, routine, repetitive tasks.[4]

(Tr. 62) The vocational expert stated that such an individual would not be able to return to any of Plaintiff's past work, but that there were other unskilled jobs in the national economy that he could perform, such as dining room attendant, machine cleaner, and "bander, wrapper, hand packer." (Tr. 62-63) When the ALJ eliminated the hypothetical individual's ability to kneel or crawl, the vocational expert opined the changes would not impact his earlier answer. (Tr. 63-64) The ALJ then moved to an exertional level of light, with the same stated limitations as the earlier hypothetical, and the vocational expert testified that possible jobs included bagger of clothing or garments, bench assembler, or packer. (Tr. 64-65)[5] The vocational expert further opined that the jobs he considered would allow a maximum of three to five days per year of unexcused absences, and that the number of excused absences would depend on the individual employer. (Tr. 65-66)

With regard to Plaintiff's medical records, the Court adopts the facts that Plaintiff set forth in his Social Security Statement of Facts, which the Commissioner admitted with certain additions and clarifications. (ECF Nos. 20-1, 27-1) The Court also adopts the facts set forth in the

---

[4] The ALJ later asked if there were "jobs that don't involve a lot of interaction with the public, coworkers, and supervisors," and the vocational expert responded that such jobs did exist. (Tr. 62-63)

[5] The vocational expert further testified that with the transferrable skills from Plaintiff's previous work as a plumber, other potential jobs might include assembly work and parts inspector. (Tr. 68)

3

Commissioner's Statement of Additional Facts, because Plaintiff did not refute them. (ECF No. 27-2) The Court will cite to specific portions of the transcript as needed to address the parties' arguments.

### III. Standards for Determining Disability Under the Social Security Act

To be eligible for benefits under the Social Security Act, a claimant must prove he or she is disabled. *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Sec'y of Health & Hum. Servs.*, 955 F.2d 552, 555 (8th Cir. 1992). Under the Social Security Act, a person is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). *Accord Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). The impairment must be "of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he [or she] lives, or whether a specific job vacancy exists for him [or her], or whether he [or she] would be hired if he [or she] applied for work." 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. 20 C.F.R. § 416.920(a); *see also McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011) (discussing the five-step process). At step one, the Commissioner determines whether the claimant is currently engaging in "substantial gainful activity"; if so, then the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i); *McCoy*, 648 F.3d at 611. At step two, the Commissioner determines whether the claimant has "a severe medically determinable physical or mental

impairment that meets the [twelve-month] duration requirement in § 416.909, or a combination of impairments that is severe and meets the duration requirement"; if the claimant does not have a severe impairment, the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(ii); *McCoy*, 648 F.3d at 611. To be severe, an impairment must "significantly limit[] [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). At step three, the Commissioner evaluates whether the claimant's impairment meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "listings"). 20 C.F.R. § 416.920(a)(4)(iii); *McCoy*, 648 F.3d at 611. If the claimant has such an impairment, the Commissioner will find the claimant disabled; if not, the Commissioner proceeds with the rest of the five-step process. 20 C.F.R. § 416.920(d); *McCoy*, 648 F.3d at 611.

Prior to step four, the Commissioner assesses the claimant's residual functional capacity ("RFC"), 20 C.F.R. § 416.920(a)(4), which is "the most [a claimant] can still do despite [his or her] limitations," 20 C.F.R. § 416.945(a)(1). *See also Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009). At step four, the Commissioner determines whether the claimant can return to his or her past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.920(f); *McCoy*, 648 F.3d at 611. If the claimant can perform his or her past relevant work, the claimant is not disabled; if the claimant cannot, the analysis proceeds to the next step. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.920(f); *McCoy*, 648 F.3d at 611. At step five, the Commissioner considers the claimant's RFC, age, education, and work experience to determine whether the claimant can make an adjustment to other work in the national economy; if the claimant cannot make an adjustment to other work, the claimant will be found disabled. 20 C.F.R. §§ 416.920(a)(4)(v), 416.920(g), 416.1560(c)(2); *McCoy*, 648 F.3d at 611.

Through step four, the burden remains with the claimant to prove that he or she is disabled. *Moore*, 572 F.3d at 523. At step five, the burden shifts to the Commissioner to establish that, given the claimant's RFC, age, education, and work experience, there are a significant number of other jobs in the national economy that the claimant can perform. *Id.*; *Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. § 416.960(c)(2).

## IV.   The ALJ's Decision

The ALJ applied the five-step evaluation set forth in 20 C.F.R. § 416.920 and found that Plaintiff: (1) had not engaged in substantial gainful activity since December 14, 2016, the application date; and (2) had the severe impairments of osteoarthritis of the knee, degenerative disc disease at the lumbar spine, and obesity, that significantly limited his ability to perform basic work activities as required by SSR 85-28. (Tr. 14)[6] At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 15)

The ALJ found that, although "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms," "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record."[7] (Tr. 17) For example, the ALJ found that while Plaintiff had been diagnosed with various musculoskeletal impairments, he was not

---

[6] The ALJ found Plaintiff's hypertension and elevated liver enzymes were nonsevere impairments, as they did not cause more than minimal effects on his ability to engage in basic work duties. (Tr. 14)

[7] The ALJ noted that Plaintiff alleged "multiple severe physical impairments have affected his ability to engage in work duties for a sustained period. In particular, the claimant testified that his right knee joint is often swollen, and he sees a chiropractor at least once a week. He notes that he often limps when he walks and experiences pain and numbness that radiates when he walks. He indicates that he is always in pain that is exacerbated when he performs physical and exertional activities." (Tr. 16-17)

6

completely devoid of all functional abilities as a result. (Tr. 17)  The ALJ noted that while disc degeneration in the lumbar spine was demonstrated, and Plaintiff exhibited limited motion at L1-L5, as well as parts of the thoracic and cervical spine, "treatment for the claimant's musculoskeletal impairments have been rudimentary at best." (*Id.*).  Plaintiff had not undergone any form of surgical intervention for his lumbar or knee impairment, and the record contained evidence of relief following more conservative treatment such as "K-tapping" or bracing, biofreeze and therapy. (*Id.*)  She noted that while Plaintiff exhibited moderate levels of scoliosis in the lumbar region, the intervertebral discs were normal height and there were no arteriosclerotic findings noted. (*Id.*).  Further, despite his musculoskeletal conditions Plaintiff demonstrated normal gait and stance, and the record showed no use of an assistive device. (*Id.*)  Finally, the ALJ found Plaintiff's own testimony tended to negate the severity of his impairments, as he attested that he performed yard work at least every other week, helped to care for his two year old grandson, cooked, fished, and engaged in other physical and exertional activities. (*Id.*)  The ALJ concluded that "[w]hen reviewed in tandem, the contemporaneous medical evidence shows a trajectory of improvement and, while [Plaintiff] exhibits some limitations in his exertional and postural abilities, he is able to perform certain tasks with appropriate treatment and medical management." (*Id.*)

After reviewing Plaintiff's testimony and medical records, the ALJ determined that Plaintiff had the RFC to perform medium work, except that:

> the claimant [c]an never climb ropes, ladders, or scaffolds but can occasionally climb ramps and stairs.  He can frequently use foot controls with right lower extremity, stoop and crouch.  He can occasionally kneel and crawl.

7

(Tr. 16)[8]  Based on the vocational expert's testimony, the ALJ found that Plaintiff could not perform any past relevant work, but had the RFC to perform jobs that existed in significant numbers in the national economy, such as dining room attendant, machine cleaner, and bander wrapper/packer. (Tr. 19-20)  The ALJ therefore concluded that Plaintiff was not disabled. (Tr. 20)

V. **Discussion**

Plaintiff claims the ALJ erred in determining his RFC because substantial evidence did not exist in the record to support the RFC determination. (ECF No. 20)  The Commissioner counters that substantial evidence supported the ALJ's RFC determination. (ECF No. 27)

A. Standard of Judicial Review

A court must affirm an ALJ's decision if it is supported by substantial evidence. 42 U.S.C. § 405(g). "'Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion.'" *Chesser v. Berryhill*, 858 F.3d 1161, 1164 (8th Cir. 2017) (quoting *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)). A court must consider "both evidence that supports and evidence that detracts from the ALJ's determination, [but it] 'may not reverse the Commissioner's decision merely because substantial evidence supports a contrary outcome.'" *Id*. (internal quotation marks and citations omitted).

A court does not "'reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence.'" *Renstrom v. Astrue*, 680 F.3d 1057, 1064

---

[8] Dr. Manuel Salinas, a State non-examining agency consultant, opined that Plaintiff had the capacity to perform work at the light exertional level with no added restrictions. (Tr. 95)  The ALJ afforded Dr. Salinas' findings only partial weight, stating that "a review of the objective evidence as well as the claimant's own testimony shows his physical and exertional abilities are above the light level, despite his osteoarthritis and lumbar disorder." (Tr. 18)

(8th Cir. 2012) (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006)). Therefore, the Court must affirm the ALJ's decision if "'it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings[.]'" *Wright v. Colvin*, 789 F.3d 847, 852 (8th Cir. 2015) (quoting *Perkins v. Astrue*, 648 F.3d 892, 897 (8th Cir. 2011)).

B. RFC Determination

Plaintiff claims the ALJ erred in determining his physical RFC because the finding was not supported by substantial evidence. More specifically, Plaintiff contends that the ALJ misstated the record and discounted the opinion of the only medical professional who assessed Plaintiff's functional capacity. The Commissioner counters that substantial evidence in the record as a whole supported the ALJ's decision.

RFC is "the most [a claimant] can still do despite" his or her physical or mental limitations. 20 C.F.R. § 404.1545(a)(1). *See also Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004). "The ALJ should determine a claimant's RFC based on all relevant evidence including the medical records, observations of treating physicians and others, and an individual's own description of his limitations." *Moore*, 572 F.3d at 523 (internal quotation marks and citation omitted).

"Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." *Combs v. Berryhill*, 878 F.3d 642, 646 (8th Cir. 2017) (internal quotation marks and citation omitted). "However, there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) (citations omitted). An ALJ "is not limited to considering medical evidence exclusively," as even though the "RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner." *Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007)

9

(citations omitted).  While the Court recognizes that an ALJ "may not draw upon [her] own inferences from medical reports," *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000), the Eighth Circuit has held that the "interpretation of physicians' findings is a factual matter left to the ALJ's authority." *Mabry v. Colvin*, 815 F.3d 386, 391 (8th Cir. 2016) (citation omitted).

Plaintiff argues that it is unclear based upon the record how the ALJ determined Plaintiff was capable of medium work, especially because the only medical professional who assessed his functional capacity (Dr. Salinas) opined he could only perform light work.  Responding, the Commissioner asserts that the RFC is supported by substantial evidence.

The Court agrees with the Commissioner's arguments and holds that substantial evidence supports the ALJ's decision.  Plaintiff cites *Combs v. Berryhill*, 878 F.3d 642 (8th Cir. 2017) for support, but that case is readily distinguishable.  There, the Eighth Circuit found that the ALJ failed to develop the record because the ALJ failed to seek clarification from the claimant's treating physicians regarding the meaning of "no acute distress" and "normal movement of all extremities." *Id.* at 646–47.  Rather than seeking clarification, the Eighth Circuit held that the ALJ improperly relied on his own interpretation of those terms when determining the weight to assign the opinions of two reviewing physicians, and the relevance of the terms to determining the plaintiff's ability to function in the workplace.  *Id.*

By contrast, the ALJ here did not simply substitute her own interpretation for Dr. Salinas' opinion.  Instead, she found the opinion only partially persuasive because although the records showed some restrictions due to Plaintiff's musculoskeletal impairment, "a review of the objective evidence as well as the claimant's own testimony shows his physical and exertional abilities are above the light level, despite his osteoarthritis and lumbar disorder." (Tr. 18)  As noted above, the ALJ's conclusion was supported earlier in the decision by citations to the record.  For example,

10

she noted that despite the findings of disc degeneration in the lumbar spine and a limited range of motion at L1-L5, Plaintiff's treatment had been "rudimentary at best," he had not undergone surgical intervention, and the record contained evidence of relief following conservative treatment. (Tr. 17)  She further noted that Plaintiff often exhibited normal gait and stance, and did not use an assistive device.  In addition, the ALJ concluded that Plaintiff's own testimony regarding his daily activities tended to negate the severity of his impairments.  *Id.*

The ALJ stated that she had reached her conclusion "[a]fter careful consideration of the entire record[.]" (Tr. 16)  For her part, the Commissioner notes the record contains evidence that: (1) throughout the relevant period Plaintiff relied solely on conservative care, which he admitted was beneficial (Tr. 307, 309, 450, 475, 606, 609, 692, 811); (2) Plaintiff stated he would not consider having surgery, despite his belief that it was the only option that would "fix" his pain (Tr. 385, 391, 811, 814, 816); and (3) Plaintiff's increased pain often resulted from his own activities, which included cleaning the alley behind his home (Tr. 384, 386), jumping off a ladder and landing on his feet (Tr. 393), caring for his sick wife (Tr. 766), slipping in the mud while carrying his grandson (Tr. 719), "lifting as a plumber" (Tr. 695), mowing the grass and doing yard work (Tr. 632, 686, 695), being active in church (Tr. 639, 635), installing a toilet (Tr. 421), and spending five hours installing a barbeque unit at his home (Tr. 431).  (ECF No. 27, PP. 6-9).[9]

---

[9]  The Court notes the record contains other evidence that Plaintiff's own activities exacerbated his symptoms.  For example, he reported increased pain after working and reaching overhead to change pipes (Tr. 662), carrying out multiple bags of trash (Tr. 475), carrying four bags of ice (Tr. 472), and trimming bushes (Tr. 948), and numbness after going on several three mile walks (Tr. 590).  Plaintiff further reported satisfactorily continuing to engage in physical activities despite his conditions, including helping his daughter with chores and setting up a new bedroom for her (Tr. 707), and going for a run (Tr. 519).

11

Upon consideration of the foregoing, it cannot be said that the ALJ used her own inferences to determine the medical evidence. Rather, she reached her conclusion based upon all the evidence in the record, including Plaintiff's testimony, activities of daily living, and previous work history.

Although Plaintiff is correct that there are medical records showing "abnormal range of motion in the lumbar spine, pain with range of motion, limited range of motion in the knees, swelling of the knee and back, a limping gait, and tenderness of the right knee with ambulation," (ECF No. 20, P. 4), this Court's review is limited to determining whether the ALJ's findings are based on correct legal standards and supported by substantial evidence on the record as a whole. *See* 42 U.S.C. §§ 405(g); 1383(c)(3); *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). As long as there is substantial evidence in the record that supports the decision, this Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). *See also Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011) (internal quotation marks and citation omitted) (An ALJ's decision is not to be disturbed "so long as the ... decision falls within the available zone of choice. An ALJ's decision is not outside the zone of choice simply because [the Court] might have reached a different conclusion had [the Court] been the initial finder of fact."). Here, the ALJ's decision, and, therefore, the Commissioner's, was within the zone of choice. *See Fentress v. Berryhill*, 854 F.3d 1016, 1021 (8th Cir. 2017). The Court therefore finds that substantial evidence supported the ALJ's RFC determination.

**VI.    Conclusion**

For the reasons discussed above, the Court finds that substantial evidence in the record as a whole supports the ALJ's decision that Plaintiff "has not been under a disability within the meaning of the Social Security Act since December 14, 2016, the date the application was filed."

Accordingly,

**IT IS HEREBY ORDERED** that the final decision of Defendant denying Social Security benefits to Plaintiff is **AFFIRMED**.

A separate judgment in accordance with this Memorandum and Order is entered this date.

_____
PATRICIA L. COHEN
UNITED STATES MAGISTRATE JUDGE

Dated this 24th day of January, 2023.